FAXED: 315-234-8501

September 12, 2011

Hon. David E. Peebles, U.S. Magistrate Judge
Federal Building and U.S. Courthouse
P.O. Box 7345
Syracuse, NY 13261-7345

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

SEP 12 2011

LAWRENCE K. BAERMAN, CLERK
ALBANY

Re: **NXIVM Corp. Motion for Sanctions and Contempt**
   **Non-Party Witness Barbara Bouchey**
   **Misc. Action No.: 1:11-mc-00058-GLS-DEP**

Dear Judge Peebles:

After speaking Friday afternoon with your law clerk, Cindy, it is my understanding that I do not need to file a Response right now and instead a conference call is scheduled today at 2:30 PM. In light of that, I thought it would be good to clarify just a few facts in preparation for the call today.

An attorney representing non-party witness, Sheila Cote, canceled a mere hour or so prior to the start of that deposition last Monday due to complications from the hurricane. Without hesitation, Ms. Nichols rescheduled Ms. Cote's deposition to September 13th. On the same day, I notified Ms. Nichols that I had complications as well and asked to reschedule my deposition; however, she refused and instead filed a 54-page Contempt Motion.

The following day a hearing was held with Judge Lynch to review the Preliminary Injunction agreement, which had been anticipated, with both parties, along with dismissing most of NXIVM's causes of action; thereby, eliminating most areas that could be questioned in any remaining depositions (See Exh. A: NXIVM Remaining Causes of Action). It had also been ruled that the deposition of non-party witness, Toni Foley, was to be held at the Rochester Courthouse with Judge Feldman assigned to supervise; which resulted in his need to overrule on the majority of NXIVM's attorney questions because they were now irrelevant; thereby, a deposition slated to take 6 hours took less than 2 hours. Ms. Foley filed a statement (See Exh. B: Foley Statement) in regards to her Motion to Quash that the NXIVM Founder, Keith Raniere, had raped her numerous times, legally abused her for over 8 years, and was suspicious they would use the deposition to continue that harassment and try to gain knowledge of some women they suspected may have confided in her some of their sexual abuse as well - some of them being underage. NXIVM attempted to have this statement sealed; however, Judge Larimer denied their request on September 8th (See Exh. C: Court Order).

In the last deposition NXIVM's attorney conducted on me in *NXIVM v. Ross*, Judge Falk from the New Jersey Federal District Court had to issue a Protective Order ruling that my deposition was to take place in his Chambers so that he could supervise in the event it turned into a "fishing expedition" and the line of questioning was harassing due to my previous experiences with NXIVM attorneys (See Exh. D: Protective Order).

   In light of these facts and circumstances, I respectfully request that if any depositions are to be held in this matter that they are done in a Courthouse with a supervising Judge present. There is much evidence that NXIVM uses litigations and depositions to harass and threaten individuals while improperly attempting to garner information unrelated or irrelevant to the underlying case.

   And lastly, Ms. Nichols has grossly misrepresented and spoke many untruths in regards to my conduct and handling of legal matters. The facts are that I have acted responsibly, graciously and dutifully in complying fully to the barrage of legal abuse directed towards me collectively from their 6 prominent law firms resulting in my being dragged into, without any say or control, at least 10 litigations (6 filed against me) resulting in over 800 filings, containing over 16, 000 pages filled with untruths and fabrications, from within 3 different states, before 8 Judges; thereby, forcing me into bankruptcy after costing me over $400,000 in fees trying to defend myself. I assure Your Honor that should all the facts be known about what NXIVM has really done to me over the last two years that it should be considered criminal. What I have been doing recently, though, is fighting back by bringing forth facts and evidence in the hopes that this legal abuse is not allowed to continue, and that is my legal right to do so and not defiance. I hope someday the truth comes out, because their abuse of the legal system and the vendetta sought on individuals such as myself needs to stop.

   In the meantime, thank you for your time and consideration in this matter.

Sincerely,

*[signature: Barbara Bouchey]*

Barbara Bouchey, *Pro se*

Emailed:  Ms. Nichols
Faxed:   Judge Peebles Chambers
Filed:    Albany Federal Court

# Exhibit A

## NXIVM Claims

WHEREFORE, the NXIVM demands judgment against Defendant as follows:

**~~FIRST CAUSE OF ACTION~~ Removed by Judge Lynch**

**~~SECOND CAUSE OF ACTION~~ Removed by Judge Lynch**

**THIRD CAUSE OF ACTION (Denial of Discharge Pursuant to 11 U.S.C. §727(a)(2)**

    A. NXIVM's Client List (stated as a "Student List") in her Schedule B

(3) On the Third Cause of Action, judgment denying Defendant's discharge pursuant to 11 U.S.C. §727(a)(2);

**FOURTH CAUSE OF ACTION (Knowing and False Oaths pursuant to 11 U.S.C. §727(a)(4) and (a)(7))**

    A. ~~Schedule B, Personal Property, Question No. 24, Defendant lists "NXIVM Client List" with a zero value.~~
    B. Defendant omitted a substantial claim against NXIVM which she identified in the Resignation Email.
    C. Defendant was a named beneficiary in the Last Will and Testament of Dorcas Suzanne Kemp

(4) On the Fourth Cause of Action, judgment denying Defendant's discharge pursuant to 11 U.S.C. §727(a)(4) and (a) and (7);

**FIFTH CAUSE OF ACTION (Return of Property)**
(5) On the Fifth Cause of Action, an Order directing Defendant to return the property of the NXIVM to NXIVM;

**SIXTH CAUSE OF ACTION (Injunctive Relief)**
(6) On the Sixth Cause of Action, an Order granting preliminary and permanent injunctive relief in favor of NXIVM;

**~~SEVENTH CAUSE OF ACTION~~ Removed by Judge Lynch**

# Exhibit B

FILED
2011 AUG 25 AM 10:05

|  |
|---|
| **Statement**<br>**By**<br>**Toni F. Foley** |
| **August 22, 2011** |

Thank you, Judge Larimer, for allowing me to explain today why I believe that NXIVM Corporation ("NXIVM") should **not** be allowed to take my deposition in the pending bankruptcy cases of Ms. Susan Dones and Ms. Kim Woolhouse – or, in the alternative, why severe limitations and rules should be placed on that deposition. In this regard, it is important to note that NXIVM is a cult that is presided over by Keith Raniere ("Raniere"), whose followers are required to call him "Vanguard" – and that everything which NXIVM does is controlled by Raniere, including the decision to take my deposition in a case in which I have no pertinent knowledge or documents.

Although I will do my best not to waste this Court's time, I ask your Honor's patience regarding the fact that I do not fully understanding the legal process. I also request that this Court allow me to finish my statement without interruptions from NXIVM's attorney.

Because I do **not** have sufficient funds to hire my own attorney in this matter, I made several attempts to find an attorney to represent me on a *pro bono* basis. Unfortunately, whenever prospective candidates Google the name "NXIVM", they quickly figure out that their representation of me could go on for years, just like my bankruptcy case did for eight (8) years and four (4) months – and just like one of NXIVM's current lawsuits against Rick Ross, a nationally acclaimed cult de-programmer, who has been pursued by NXIVM through several different legal venues since mid-2003.

I ask this Court to take judicial notice of the following statement from Judge Littlefield, who is the judge that presided over my bankruptcy case: *"This matter smacks of a jilted fellow's attempt at revenge or retaliation against his former girlfriend, with many attempts at tripping her up along the way"*. I also ask this Court to recognize that NXIVM's attempt to depose me in the

bankruptcy cases of Ms. Dones and Ms. Woolhouse is just another act of revenge by Raniere and his followers.

I will not waste this Court's time repeating all of the statements that were set forth in my motion. Instead, I will focus on the three (3) main reasons why the subpoena concerning the taking of my deposition should be quashed. Those are:

> ➢ <u>First</u>, Prior to leaving him in 1999, I was raped repeatedly by Raniere, each time with him telling me it was harder on him than it was on me, that we needed to be together so that I could share in his energy, and that I needed to remain silent so as to not wake up my child who was sleeping in a nearby room. This, as well as other experiences, has resulted in me being diagnosed with Post Traumatic Stress Disorder ("PTSD") and, as of August 2009, fibromyalgia – conditions which, according to a recent letter from my physician, Dr. Bernard J. Plansky, M.D. ("Dr. Plansky"), will likely worsen if I am forced to participate in a deposition by representatives of NXIVM.

> ➢ <u>Second</u>, the real reasons why NXIVM wants to depose me have nothing to do with the bankruptcy cases of Ms. Dones and Ms. Woolhouse, whom I had not even heard of before June 2009 and with whom I did not have any significant discussions until early 2010. In this regard, I believe that one of the primary reasons why NXIVM wants to depose me is to silence me from revealing things that I know about Raniere such as the fact that he is a compulsive gambler, a sex addict with bizarre desires and needs, and a con man that specializes in Ponzi schemes. In addition, I also think that NXIVM wants to depose me in order to make me reveal the names of the various women who have contacted me in order to discuss their sexual involvement with Raniere, at least one of which was well under the age of consent, their mental abuse by him and his followers, and the fact that they and members of their families were stalked by Raniere and his followers when they chose to leave him.

> ➢ <u>Third</u>, I have no knowledge whatsoever concerning any matters that are pertinent to any of the remaining issues in the bankruptcy cases of Ms. Dones and Ms. Woolhouse. In this regard, my interactions with them have all focused on our mutual need to develop ways to cope with the trauma that has been inflicted upon us by NXIVM and Raniere and to

move on with our lives – and absolutely nothing to do with any issues between them and NXIVM.

Unlike most of the other people that NXIVM has sought to silence via some type of legal proceeding, I have never signed one of its "Confidentiality Agreements". As a result, NXIVM can not use that weapon in its efforts to silence me.

Pamela Nichols, one of the members of NXIVM's massive legal team, asserts in her filling dated July 27 2011 (Point II/Page 10), *"Ms. Natalie conducted a business with Keith Raniere before Raniere was the conceptual founder of NXIVM"*, a statement which is totally false and which reflects just how far NXIVM's attorneys will distort the truth on behalf of their client. The reality is that for a period of time I became the "front woman" for one of Raniere's multi-level marketing (MLM) schemes – and that during this same time period, Raniere manipulated me into using Nancy Salzman ("Salzman") a/k/a "Prefect", the current President of NXIVM, as my personal therapist.

When I finally came to realize that Raniere and Salzman were trying to brainwash me, I removed my son from the situation – and fled. Since that time, I have been stalked and threatened and the subject of numerous legal actions – and I have had to defend myself against a variety of potential criminal charges as a result of complaints that I believe were filed by NXIVM and/or members of its "inner circle".

As soon as I left, I was labeled as a "suppressive" – which, per Raniere's unattributed use of language from *Paradise Lost*, made me the equivalent of Lucifer. And I have had to endure NXIVM's ongoing abuse of several members of my family – including my 80-old mother, my 85-year old father, and my brother who was eventually driven to commit suicide in March 2009.

For more than a decade, NXIVM and Raniere have been abusing and misusing the legal system in order to silence their critics – and to scare their members into submission. This misbehavior has increased greatly since the cult and its leader gained influence and control over the vast fortune of Clare and Sara Bronfman, two (2) young women who are heirs to the Bronfman family fortune and who are the de facto owners of NXIVM.

The time has come for a court to put an end to NXIVM's abuse and misuse of the legal system – and to say "No" to NXIVM's terrorism by litigation.

Hopefully, this is the Court that will do that by granting my request that NXIVM's motion to take my deposition be quashed.

If, notwithstanding my arguments, this Court allows NXIVM to take my deposition, then I ask that this Court impose the following limitations and rules on it:

- Not allow the deposition to be scheduled until Dr. Plansky has returned from his vacation, which is expected to be sometime after Labor Day;

- Limit the deposition to two (2) hours instead of the four (4) hours that were approved by Judge Lynch;

- Not allow the deposition to be videotaped in any way – including recording via cell phone by NXIVM's attorneys;

- Require NXIVM to pay for whatever expense I incur in hiring an attorney to prepare me for the deposition – and to represent me during it and thereafter;

- Limit the deposition to questions directly concerning NXIVM's remaining claims against Ms. Dones and Ms. Woolhouse (I ask the Court to take judicial notice of the fact that rather than produce the financial information that it had been ordered to produce by Judge Lynch, NXIVM recently waived all of its claims for financial damages against Ms. Dones and Ms. Woolhouse);

- Require NXIVM to provide me with copies of the transcripts from every other deposition it has taken in this matter at least ten (10) days before the date of my deposition;

- Require NXIVM to provide me with a written transcript of my deposition within five (5) days of its completion;

- Schedule the deposition to take place on September 12, 2011 at the location of my choosing in either Albany, NY or Rochester, NY;

- Allow me to have a non-attorney advisor attend the deposition if I am still not able to find an attorney who will represent me on a *pro bono* basis;

- ➤ Allow me to avoid answering any questions that I have reason to believe will aid and abet NXIVM and/or Raniere in the commission of criminal acts;

- ➤ Have the entire deposition be conducted in an open forum that can be attended by anyone who has been approved by NXIVM or me except Kristin Keeffe, a member of NXIVM's "inner circle" and a woman who previously acted as a nanny for my son; and

- ➤ Require NXIVM to post a cash bond of at least Two Hundred Fifty Thousand Dollars ($250,000) in order to cover the cost of any medical treatments that I may need as a result of my participation in the deposition.

Thank you, your Honor.

_____  
Toni F. Foley

_____8/24/2011_____  
Date

**Exhibit C**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In RE: Application of NXIVM Corporation for Ex Parte Motion to Shorten Time on Motion to Compel the Deposition of Nonparty Witness Toni Natalie and Motion to Compel the Deposition of Nonparty Witness Toni Natalie,

NXIVM CORPORATION,

                     Plaintiff,

                                                                                  DECISION AND ORDER

                                                                                  11-MC-6009L

                      v.

SUSAN FAYE DONES (10-04338-BDL) and
KIM MARIE WOOLHOUSE (10-04339-BDL).

                     Defendants.

      NXIVM Corporation commenced this miscellaneous civil action by the filing of a motion to compel the deposition of a nonparty witness. That witness, Toni Foley, responded by filing a motion to quash a subpoena served on her by NXIVM.[1]

      On August 22, 2011, in open Court, I granted NXIVM's motion to compel, denied Foley's motion to quash, and directed that the deposition be conducted on Wednesday, September 7, 2011. (Dkt. #10.) The deposition did take place on that date and has concluded.

      NXIVM, however, has also moved for an order sealing virtually the entire record in this action, particularly a "statement" filed by Foley (Dkt. #11) in support of her motion to quash. *See* Dkt. #14.

---

      [1]The motion to compel refers to Foley as Toni Natalie, which apparently is her maiden name. In her papers, she refers to herself as Toni Foley.

NXIVM's motion is denied. The well-established presumption of accessibility to court documents is reflected in Local Rule 5.4, which states that "there is a presumption that Court documents are accessible to the public and that a substantial showing is necessary to restrict access." *See also Orion Pictures v. Video Software Dealers Ass'n*, 21 F.3d 24, 26 (2d Cir. 1994) ("[C]ourts have recognized a strong presumption of public access to court records. This preference for public access is rooted in the public's first amendment right to know about the administration of justice") (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)).

While this presumption of access can be overcome by a number of countervailing interests, such as preserving a defendant's right to a fair trial or a third party's privacy interests, *see, e.g., Stephanski v. Goord*, No. 02-CV-562F, 2005 WL 711628, at *1-*2 (W.D.N.Y. Mar. 29, 2005), the Second Circuit has emphasized that a district court "must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to seal court records. *Orion Pictures*, 21 F.3d at 27. Likewise, while "[t]he court may strike from a pleading ... any immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), "[m]otions to strike are generally disfavored," and are committed to the district court's sound discretion. *Freydl v. Meringolo*, No. 09 Civ. 07196, 2011 WL 2566082, at *1 (S.D.N.Y. June 16, 2011) (quoting *Lamoureux v. Anazaohealth Corp.*, 250 F.R.D. 100, 102 (D.Conn. 2008)).

Applying these standards here, I find that NXIVM has not presented facts sufficient to overcome the presumption of openness and public access to judicial proceedings, or the general policy disfavoring the striking of filed documents absent strong reasons for doing so. Although the written "statement" filed by Foley contains various allegations of wrongdoing on the part of NXIVM and its counsel, I do not believe that the matters contained in Foley's statement are so far beyond the pale as to warrant that they be either struck or sealed. *See Lynch v. Southampton Animal Shelter Foundation Inc.*, No. 10–CV–2917, 2011 WL 3273872, at *5-*6 (E.D.N.Y. July 29, 2011) (setting for standards for determining whether material is subject to striking under Rule 12(f)).

## CONCLUSION

NXIVM's motion to seal (Dkt. #14) is denied.

The deposition of Toni Foley, a/k/a Toni Natalie, having been held on September 7, 2011, the Clerk of the Court is hereby directed to close this action.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
September 8, 2011.

# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NXIVM CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE ROSS INSTITUTE, *et al.*, <br><br> Defendants. | Civil Action No. 06-1051 (DMC) <br><br><br> <u>ORDER</u> |

This matter comes before the Court upon Defendants' short notice request for a protective order directing that the continued deposition of non-party witness Barbara Bouchey be conducted in the District of New Jersey [CM/ECF 375]. The request is opposed. The Court conducted a conference on the record on March 4, 2011, to address this issue. For the reasons that follow, and for those set forth on the record, which are expressly incorporated herein, Defendants' request is **GRANTED**. Ms. Bouchey's continued deposition shall be conducted in the District of New Jersey at the United States Post Office & Courthouse, 1 Federal Square, Newark, New Jersey, 07101 on March 10, 2011.

## Background

This case has been pending for nearly eight years. For five years, it has been pending in the District of New Jersey. The factual and procedural history is convoluted. Only an abbreviated statement of the facts directly relevant to the request for a protective order is provided.

In 2009, counsel for Defendants Morris and Rochelle Sutton and Stephanie Franco (collectively, "the Sutton Defendants") issued a Rule 45 subpoena out of the District of New Jersey for the testimony of a non-party witness, Barbara Bouchey. Ms. Bouchey's testimony was apparently sought because, among other reasons, she is a former NXIVM Executive Board member who left the organization in 2009.

On October 29, 2009, Ms. Bouchey appeared for a deposition. The deposition ended shortly after cross-examination began; counsel for NXIVM did not have an opportunity to

question Ms. Bouchey. The parties engaged in a lengthy attempt to reschedule the continued deposition but were unable to agree on a date for various reasons.

Following many failed attempts to reschedule, on December 1, 2010, counsel for Counterclaim Defendant Kristen Keefe issued two subpoenas seeking the continuation of Ms. Bouchey's deposition: one subpoena was issued out of the United States District Court for the Northern District of New York; the other was issued out of the District of New Jersey. The subpoenas seek two days of testimony and request the production of seven categories of documents.

On December 16, 2010, counsel for Ms. Keefe filed a motion to enforce the subpoena in the Northern District of New York. No motion to enforce the New Jersey subpoena was ever made.

On February 9, 2010, this Court conducted a hearing to address outstanding scheduling and discovery disputes. One of the disputes was the status of Ms. Bouchey's continued deposition. Ms. Bouchey was present at the hearing *pro se*. At the conference, the Court was read an Order issued by the Honorable George H. Lowe, United States Magistrate Judge, United States District Court for the Northern District of New York, that had been received by Ms. Keefe's counsel that morning. (Transcript of February 9, 2011 Conference ("Tr.") at 21:10-14 ("Judge, I'd like Mr. Falzone to read an email that was just received from the Magistrate Judge in Albany.")). In the Order, Judge Lowe directed that Ms. Bouchey appear for deposition in Albany, New York on March 10, 2011, at which Judge Lowe would preside. (Tr. 22: 1-14; see Order of the Honorable George H. Lowe, dated February 8, 2011.) The Order further directed Ms. Bouchey to produce the requested documents on or before March 4, 2011. (Id.) Ms. Bouchey was permitted to withhold documents she believed were privileged; they would be brought to the deposition and reviewed *in camera*. (Id.)

Despite the entry of Judge Lowe's Order, counsel for various Defendants requested that this Court issue a protective order pursuant to Federal Rule of Civil Procedure 26(c), setting the location of Ms. Bouchey's continued deposition in New Jersey and limiting the scope of documents that must be produced. (Tr. 37:20-38:19.) After lengthy colloquy, the Court suggested that it be considered "whether the parties want to perhaps confer in a civil way to make arrangements for Ms. Bouchey's deposition in New Jersey . . . in this courthouse." (Tr. at 27:1-4.) This suggestion was made because, among other things:

(1) the case has been pending in this district for years;

(2) Ms. Bouchey had located "an attorney in New Jersey" who was "willing to" defend the deposition "*pro bono*" if it were to proceed in New Jersey but not in New York (Tr. at 30:19-23); and

2

(3) Ms. Bouchey unequivocally volunteered to come to New Jersey for the deposition and agreed, without qualification, to be subject to this Court's jurisdiction for purposes of her deposition in this case (Tr. Vol. 2, 74:4-76:2; & Tr. 75:22-25, "The Court: Do you agree to – are you consenting to the jurisdiction of this Court for the purposes of your deposition in this case? Ms. Bouchey: Yes.").

The issue was left to the parties to negotiate in good faith and decide how they would like to proceed. (Tr. 50:5-7 "I'm going to let you decide and figure out how to do it, and I'll do what I think is appropriate.").

On February 18, 2011, counsel for the Sutton Defendants submitted a letter requesting that the Court issue a Rule 26(c) protective order directing that Ms. Bouchey's deposition occur in New Jersey [CM/ECF No. 375]. The Ross parties joined in the request on February 21, 2011 [CM/ECF No. 377.] The request has been opposed.

On March 4, 2011, the Court conducted a conference to address the dispute.

## Analysis

Federal Rule of Civil Procedure 26(c) provides that a court can issue an order "to protect any party or person from annoyance, embarrassment, oppression, undue burden or expense." Fed. R. Civ. P. 26(c)(1). A protective order may, among other things, "specify[] terms, including time and place, for . . . discovery"; "prescribe[] a discovery method other than the one selected by the party seeking discovery"; and "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A)-(C).

When the discovery tool at issue is a non-party subpoena issued pursuant to Rule 45, the issuing court alone has authority to quash or modify the disputed subpoena. See Fed. R. Civ. P. 45(c)(3)(A) ("On timely motion, *the issuing court* must quash or modify a subpoena."). However, the "home court" where the underlying litigation is proceeding retains the authority to issue a Rule 26(c) protective order, regardless of the fact that the subpoena was issued out of a different district. See, e.g., In re Sealed Case, 141 F.3d 337, 342 (D.C. Cir. 1998); Cent. States, Se. & Sw. Areas Pension Fund v. Quickie Transport Co., 174 F.R.D. 50, 51 (E.D. Pa. 1997); Kearney for Kearney v. Jandernoa, 172 F.R.D. 381, 383 n. 4 (N.D. Ill. 1997).

For the reasons that follow, and for the reasons set forth in more detail on the record, this Court concludes that a protective order setting the location of the deposition in New Jersey is appropriate.

*First*, this Court has been actively managing this highly contentious litigation for more than five years. The Court has familiarity with the issues involved, both with respect to the

deposition and the case as a whole. Given this Court's familiarity with the case, holding the deposition in the courthouse in New Jersey promotes the interests of justice and judicial efficiency. It would also relieve Judge Lowe from becoming embroiled in this eight year old case and traveling to Albany to preside at the deposition.

*Second*, Ms. Bouchey has expressly and publicly submitted herself to the jurisdiction of this Court for purposes of this deposition. There will be no enforcement issues with respect to Ms. Bouchey.

*Third*, Ms. Bouchey has been offered the *pro bono* services of a New Jersey attorney should the deposition proceed in this District. Were the deposition to proceed in New York, Ms. Bouchey would proceed *pro se*. The Court believes that it is more efficient, and potentially beneficial to all involved, for Ms. Bouchey to be represented by counsel at her deposition, if possible.

Based on the above, the continuation of Ms. Bouchey's deposition shall be in the District of New Jersey. The deposition shall occur at the United States Post Office & Courthouse, 1 Federal Square, Newark, New Jersey 07101. The deposition shall be conducted on March 10, 2011, or another date approved by the Court. The Undersigned will be available during the deposition to address any issues that may arise.

**SO ORDERED.**

                                      s/Mark Falk
                                      **MARK FALK**
                                      **United States Magistrate Judge**

**Dated: March 7, 2011**

FAXED: 315-234-8501

September 12, 2011

Hon. David E. Peebles, U.S. Magistrate Judge
Federal Building and U.S. Courthouse
P.O. Box 7345
Syracuse, NY 13261-7345

Re:   **NXIVM Corp. Motion for Sanctions and Contempt**
      **Non-Party Witness Barbara Bouchey**
      **Misc. Action No.: 1:11-mc-00058-GLS-DEP**

Dear Judge Peebles:

     After speaking Friday afternoon with your law clerk, Cindy, it is my understanding that I do not need to file a Response right now and instead a conference call is scheduled today at 2:30 PM. In light of that, I thought it would be good to clarify just a few facts in preparation for the call today.

     An attorney representing non-party witness, Sheila Cote, canceled a mere hour or so prior to the start of that deposition last Monday due to complications from the hurricane. Without hesitation, Ms. Nichols rescheduled Ms. Cote's deposition to September 13th. On the same day, I notified Ms. Nichols that I had complications as well and asked to reschedule my deposition; however, she refused and instead filed a 54-page Contempt Motion.

     The following day a hearing was held with Judge Lynch to review the Preliminary Injunction agreement, which had been anticipated, with both parties, along with dismissing most of NXIVM's causes of action; thereby, eliminating most areas that could be questioned in any remaining depositions (See Exh. A: NXIVM Remaining Causes of Action). It had also been ruled that the deposition of non-party witness, Toni Foley, was to be held at the Rochester Courthouse with Judge Feldman assigned to supervise; which resulted in his need to overrule on the majority of NXIVM's attorney questions because they were now irrelevant; thereby, a deposition slated to take 6 hours took less than 2 hours. Ms. Foley filed a statement (See Exh. B: Foley Statement) in regards to her Motion to Quash that the NXIVM Founder, Keith Raniere, had raped her numerous times, legally abused her for over 8 years, and was suspicious they would use the deposition to continue that harassment and try to gain knowledge of some women they suspected may have confided in her some of their sexual abuse as well - some of them being underage. NXIVM attempted to have this statement sealed; however, Judge Larimer denied their request on September 8th (See Exh. C: Court Order).

     In the last deposition NXIVM's attorney conducted on me in *NXIVM v. Ross*, Judge Falk from the New Jersey Federal District Court had to issue a Protective Order ruling that my deposition was to take place in his Chambers so that he could supervise in the event it turned into a "fishing expedition" and the line of questioning was harassing due to my previous experiences with NXIVM attorneys (See Exh. D: Protective Order).